UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CARLA BROWNLEE, | |
| Plaintiff, | |
| v. | Case No. 24-cv-12745 |
| 41B DISTRICT COURT, | Honorable Robert J. White |
| Defendant. | |

## ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS (ECF No. 13)

Plaintiff Carla Brownlee sued the 41B District Court (41B) for employment discrimination based on her race, gender, and disability. (ECF No. 7, PageID.86–88, 90–91, 98–102).  Brownlee also alleged that 41B retaliated against her based on these same characteristics and because she requested to take leave under federal law. (*Id.* at PageID.88–89, 91–97).  Presently before the Court is 41B's motion to dismiss Brownlee's claims. (ECF No. 13).  In her response to 41B's motion to dismiss, Brownlee asked the Court to grant her leave to amend if the Court found that Brownlee did not allege adequately her claims. (ECF No. 15, PageID.228).

The Court finds the parties' briefing sufficient to resolve the motion absent a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).  For the reasons explained below, the Court will grant 41B's motion to dismiss without prejudice.  In

doing so, the Court will deny Brownlee's request for leave to amend. Because the Court will dismiss Brownlee's claims without prejudice, she is free to allege any viable claims against individual defendants in a separate complaint.

## I.    Background

Brownlee is an African American woman previously employed by 41B in its probation department. (ECF No. 7, PageID.77, 86). The Court can best summarize Brownlee's allegations against 41B as a series of management missteps, discordant colleagues, and seeming disregard of federal law protections for injured workers.

The Court will begin with the managerial failings that allegedly demonstrate the disparate treatment Brownlee faced. *See* ECF No. 15, PageID.225. To start, in March 2020, Brownlee discovered that a white male probation officer not only falsified files but deleted files, case notes, and probation recommendations from 41B's system. (*Id.* at PageID.77–78). When Brownlee reported these issues to a 41B judge, the 41B chief judge, and the court administrator, they allegedly took no action against said colleague. (*Id.*).

Several months later, 41B laid off the vast majority of its probation department staff. (*Id.* at PageID.78). The layoffs meant that only Brownlee and one other staffer would remain. (*Id.*). Brownlee, however, had almost no input in who would be allowed to stay, and 41B's management ultimately selected the same colleague who had falsified documents to remain. (*Id.*). Brownlee voiced her concerns to the court

2

administrator about the layoffs, including that management made her feel excluded and disrespected. (*Id.* at PageID.78–79).  But nothing appeared to change. (*Id.* at PageID.79).

To rub salt in the wound, about two years later, the court administrator decided to send the same probation officer who falsified documents to a probation conference as opposed to Brownlee. (*Id.* at PageID.79).  Brownlee claimed the probation officer used the conference as a way to avoid his work pending his approaching retirement. (*Id.*).  And following his retirement, the probation department faced significant staffing issues. (*Id.* at PageID.79–80).

Brownlee requested additional help; although management transferred an employee (Employee One) to the probation department, Brownlee believed he fell short of the qualifications needed for the department. (*Id.* at PageID.80).  Namely, Employee One, a white male, had a reputation for "numerous documented issues" in his prior role at 41B. (*Id.*).  Management ignored Brownlee's concerns and eventually promoted Employee One over Brownlee's objections. (*Id.* at PageID.80–81).  Brownlee alleged that Employee One formerly worked at a 41B judge's law firm and suggested this was the reason he was hired in the first place, despite other qualified candidates applying for the position. (*Id.*).

In early 2023, Employee One requested a day off for a doctor's appoint that was going to take several hours and offered two dates. (*Id.* at PageID.82).  Brownlee told him the day that would work better based on the court's schedule, but Employee One disregarded her instruction and chose "the more inconvenient day." (*Id.*).  The court administrator did not enforce the union's policy of requiring a doctor's note for Employee One's day off, despite requiring one for others who took similar time off. (*Id.* at PageID.82–83).  Employee One quit shortly after his supposed doctor's appointment[1], once again leaving the probation department short staffed. (*Id.* at PageID.83).  41B management bridged the gap with a hastily trained employee from another department. (*Id.*).  The employee made numerous errors affecting the rights of criminal defendants; again, Brownlee complained to management about these issues to no avail. (*Id.* at PageID.83–84).  Overall, Brownlee alleged that not only were her and others treated less favorably than white male colleagues, but management knew of and disregarded her concerns. (*Id.* at PageID.87, 90–91, 102).

Beyond the back-and-forth with management about its staffing decisions, Brownlee claimed that others at 41B created a hostile work environment through their comments and behaviors.  One employee in particular (Employee Two) allegedly made disparaging remarks about Brownlee to fellow co-workers.  For

---

[1] Brownlee speculated that Employee One did not use his day off to go to the doctor but rather to get a tattoo. (ECF No. 7, PageID.83).

example, Employee Two would tell new hires at 41B that they did "not want to work in probation," and referred to Brownlee as "the problem child." (*Id.* at PageID.81). Employee Two's comments culminated in a statement made in front of thirty employees and judges that 41B "should light a match and blow up the probation department." (*Id.* at PageID.82).

And as relevant to Brownlee's Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* (1993) and Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (1990) claims, in December 2023, Brownlee scheduled a call with the court administrator to discuss her medical insurance and paperwork under the FMLA after suffering an injury outside of work. (*Id.* at PageID.84).   Brownlee sought to take leave under the FMLA for her injury. (*Id.* at PageID.94).   The court administrator informed Brownlee there was an issue with the paperwork and that she would need to get a second opinion. (*Id.* at PageID.84).   The court administrator then proceeded to schedule Brownlee an appointment with a "fitness for duty" doctor without Brownlee's consent. (*Id.* at PageID.84–85).   Brownlee felt pressured to attend the appointment. (*Id.* at PageID.85).   Later that month, Brownlee received an email and letter stating that she was unfit for work and that her job would be posted. (*Id.*).   She was prevented from using her accumulated time off and removed from her position. (*Id.*).

Brownlee submitted a charge to the Equal Employment Opportunity Commission (EEOC) on July 16, 2024 and received a right to sue letter two days after. (*Id.* at PageID.86). Brownlee then initiated the present lawsuit against 41B and brought the following eight counts: (I) race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (1964); (II) retaliation in violation of 42 U.S.C. § 1981; (III) race discrimination in violation of § 1981; (IV) retaliation in violation of Title VII; (V) interference and retaliation in violation of the FMLA; (VI) retaliation in violation of the ADA; (VII) disability discrimination in violation of the ADA; and (VIII) gender discrimination in violation of Title VII. (*Id.* at PageID.86–102).

41B answered the complaint and denied the allegations. (ECF No. 11). 41B subsequently moved to dismiss under Federal Rule of Civil Procedure 12(b) for lack of subject matter jurisdiction and Rule 12(c) for failure to state a claim. (ECF No. 13). 41B argued that not only is it immune from many of Brownlee's claims given that it functions as an arm of the state, but that Brownlee also did not sufficiently allege discrimination based on her protected class. (*Id.* at PageID.164–74). Brownlee responded that she was treated differently than other employees based on her race and gender and that her coworkers' harassment established a hostile work environment. (ECF No. 15, PageID.224–27). And because Congress abrogated sovereign immunity for her claims that arose under statutes remedying deprivations

6

of fundamental rights, the Court had jurisdiction. (*Id.* at PageID.227–28).   In the event that the Court believed sovereign immunity applied, however, she asked for leave to amend her complaint to name individual defendants. (*Id.* at PageID.228).

For the reasons explained below, the Court will grant 41B's motion to dismiss and deny Brownlee's request for leave to amend her complaint.

## II.    Legal Standard

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).   Courts typically characterize Rule 12(b)(1) motions as either a "facial attack or a factual attack" on subject matter jurisdiction. *Am. Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007).   A facial attack questions whether the pleadings sufficiently alleged jurisdiction. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).   In reviewing a facial attack, "the court must take the material allegations" in the complaint as true and construe them "in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).   The plaintiff carries the burden of proving jurisdiction to survive a Rule 12(b)(1) motion. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the

pleadings." A defendant may use a Rule 12(c) motion to raise the Rule 12(b)(6) defense of failure to state a claim upon which relief may be granted, even after filing an answer. Fed. R. Civ. P. 12(h)(2)(B); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987). Accordingly, courts rely on the traditional Rule 12(b)(6) standard of review for such motions. *Morgan*, 829 F.2d at 11. In deciding a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to plaintiff" and accept the complaint's well-pled facts as true. *Id.* at 12. Overall, the factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## III. Analysis

41B moved to dismiss on both jurisdictional grounds and for pleading deficiencies. After analyzing the parties' briefs, the Court finds that the Eleventh Amendment forecloses Brownlee's claims against 41B under the ADA, § 1981, and the FMLA. As for Brownlee's claims under Title VII, the Court cannot infer actionable discrimination occurred from the facts alleged. Therefore, the Court will dismiss her claims. And because Brownlee did not move for leave to amend her complaint, the Court will also deny her request to do so.

### A. 41B is Entitled to Eleventh Amendment Immunity.

Under the Eleventh Amendment, states are immune from "'all suits, whether for injunctive, declaratory or monetary relief . . . [brought] by citizens of another

state, foreigners or its own citizens.'" *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quoting *Thiokol Corp. v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993)); U.S. Const. amend. XI.  As a trial-level district court, 41B qualifies for sovereign immunity. *Pucci v. Nineteenth Dist. Court*, 628 F.3d 752, 764 (6th Cir. 2010); *see Dolan v. City of Ann Arbor*, 407 Fed. App'x 45, 45–46 (6th Cir. 2011) (upholding dismissal of claims against Fifteenth District Court on Eleventh Amendment immunity grounds); *Reed v. 45B Jud. Dist. Court*, No. 12-cv-10085, 2012 WL 273028, at *1 (E.D. Mich. Jan. 30, 2012) (dismissing claims against Michigan trial-level district court on sovereign immunity grounds).  That is, although Michigan's trial-level courts are funded by localities, the Sixth Circuit considers them as "part of one, unified judicial branch *of the state*." *Pucci*, 628 F.3d at 763.

There are three exceptions to Eleventh Amendment immunity. *Cox v. Shelby State Cmty. Coll.*, 48 Fed. App'x 500, 504 (6th Cir. 2002).  First, "[a] state may consent to suit." *Id.*  Second, Congress may "abrogate state sovereign immunity" through its Fourteenth Amendment Enforcement Clause powers. *Id.*  Third, courts may issue "an injunction ordering prospective relief against a state official in order to prevent future constitutional violations." *Id.*; *see also Ex Parte Young*, 209 U.S. 123 (1908).  The only exception that may apply here is Congressional abrogation.

41B did not consent to suit, and it is not a state official but rather an arm of the state itself.

Because the Eleventh Amendment affords 41B immunity from citizen suits, several of Brownlee's claims are thereby foreclosed.  To start, Brownlee's claims under 42 U.S.C. § 1981 for retaliation and race discrimination are barred by sovereign immunity. *McCormick*, 693 F.3d at 661 (dismissing § 1981 claims against public university because it qualified as "an arm of the state").  In fact, "it is well-settled that a plaintiff is precluded from directly suing a State in federal court" under § 1981. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). No exception applies here.

The same is true for Brownlee's claims under the FMLA.  "The FMLA recognizes two types of claims: interference claims, in which employers burden or outright deny substantive statutory rights to which their employees are entitled; and retaliation claims, in which employers initiate adverse employment actions against employees for exercising their FMLA right to take leave." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1), (2)). Brownlee alleged both interference and retaliation under the FMLA's "self-care provision." (ECF No. 7, PageID.93–94); *see Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (quoting § 2612(a)(1)(D)) ("The self-care provision of the FMLA

allows an employee 'a total of 12 workweeks of leave during any 12-month period'"

for certain health conditions.).

First, Brownlee alleged that 41B interfered with her rights under the FMLA

by failing to provide Brownlee with twelve weeks of leave for her serious health

condition. (ECF No. 7, PageID.94).  Second, 41B retaliated against Brownlee for

her FMLA self-care leave request by refusing to accept Brownlee's original injury

determination, characterizing her as "unfit for work," preventing her from using

accumulated time off, and removing her from her position. (*Id.* at PageID.85–86,

94).  But the Supreme Court held that Congress did not abrogate validly states'

immunity from suit under the self-care provision. *See Coleman v. Court of Appeals*

*of Md.*, 566 U.S. 30, 37, 43–44 (2012).   Given that no exception exists for

Brownlee's interference and retaliation claims under the self-care provision, the

claims cannot continue against 41B.

Likewise, the Eleventh Amendment bars Brownlee's claim under Title I and

Title V of the ADA. (ECF No. 7, PageID.7, 95–101).  Title I prohibits employment

discrimination on the basis of disability. 42 U.S.C. § 12112(a).   Title V bars

retaliation against employees based on an employee's opposition to any act or

practice made unlawful under the ADA. § 12203(a).  The Supreme Court provides

explicitly that suits under Title I "are barred by the Eleventh Amendment." *Bd. of*

*Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360 (2001).  So the Court lacks jurisdiction over that claim.

Although the Supreme Court has not decided whether that bar extends to claims under Title V, the Sixth Circuit held that Congress did not validly abrogate Eleventh Amendment immunity for a claim under Title V alleging retaliation for a Title I claim. *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 864–66 (6th Cir. 2024). Following Sixth Circuit precedent, then, Brownlee's Title V claim is dismissed considering her right to sue under the ADA arose from her Title I employment discrimination claim. *See id.* at 866 ("a Title V claim that is based on the exercise of a right arising only from Title I cannot be levied against the State") (citation omitted).

Brownlee responded that the Supreme Court's holding in *United States v. Georgia*, 546 U.S. 151, 159 (2006) abrogated Eleventh Amendment immunity for claims under Title II of the ADA. (ECF No. 15, PageID.227–28).  But the Court does not find that Title II applies to Brownlee's claims.  Title II makes it unlawful to exclude those with disabilities from participation in, or to deny the benefits of, the services, programs, or activities of a public entity. § 12132.  It also makes it unlawful for a public entity to discriminate against a disabled individual. *Id.*  As other circuits hold, however, Title II "is properly read to cover all types of disability discrimination in the 'outputs' . . . [i]t does not also cover disability discrimination in employment relations, which are part of the internal operations of state and local government."

*Brumfield v. Chicago*, 735 F.3d 619, 627–28 (7th Cir. 2013); *see also Mary Jo C. v. N.Y. State and Local Ret. Sys.*, 707 F.3d 144, 171 (2d Cir. 2013) (holding the ADA "unambiguously limits employment discrimination claims to Title I"); *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1316 (10th Cir. 2012) ("Title II does not contain an independent cause of action for employment discrimination . . . "); *Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169, 1178 (9th Cir. 1999) ("[T]he text, context and structure of the ADA show unambiguously that Congress did not intend for Title II to apply to employment."). The Court finds the reasoning from other circuits instructive, especially considering that Title I already governs employment discrimination based on disability. *See Brumfield*, 735 F.3d at 628.

Granted, the Sixth Circuit has yet to decide whether employees may bring a claim under Title II for discrimination, *see Whitfield v. Tenn.*, 639 F.3d 253, 258 (6th Cir. 2011). But other district courts in the Sixth Circuit agree that plaintiffs cannot pursue employment discrimination claims under Title II. *See White v. Chester Cnty. Election Comm'n*, No. 1:19-cv-01216, 2020 WL 5026868, at *8 (W.D. Tenn. Aug. 25, 2020) (adopting majority view of circuit courts deciding the issue that Title II provides no remedy for employment discrimination); *Ward v. Tenn. Dep't of Educ.*, No. 3:19-cv-00218, 2020 WL 1814194, at *4 (M.D. Tenn. Apr. 9, 2020) (finding sovereign immunity barred employment discrimination claims against the state for

money damages under Title II of the ADA).  Based on the rulings from this district and other circuits, the Court is persuaded that Brownlee's claims do not fall within Title II of the ADA and are therefore barred by Eleventh Amendment immunity.

Brownlee also attempted to argue that Eleventh Amendment immunity does not apply to her claims under § 1981 or the FMLA. (ECF No. 15, PageID.227). Brownlee's argument tracks as follows. Congress abrogated immunity for statutes that remedy certain deprivations of constitutional rights or equal protection violations, such as its amendments to Title VII. (*Id.*).  Because § 1981 and the FMLA's self-care provision remedy similar deprivations, the Court should accept that Congress intended to abrogate immunity for these statutes as well. (*Id.* at PageID.227–28).   But Plaintiff's argument completely ignores express pronouncements from the Supreme Court and the Sixth Circuit that (1) Eleventh Amendment immunity bars § 1981 and Title I of the ADA claims against state entities and (2) that Congress did not abrogate immunity for claims against the state under the FMLA self-care provision or Title V of the ADA.  Therefore, given that the Eleventh Amendment "is a true jurisdictional bar," *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015), the Court will dismiss Counts II, III, V, VI, and VII for lack of subject matter jurisdiction.

**B.      Brownlee Failed to Allege Adequately Her Claims under Title VII.**

The Eleventh Amendment does not preclude lawsuits by individuals against

the state for damages based on violations of Title VII. *See Fitizpatrick v. Bitzer*, 427

U.S. 445, 456–57 (1976).  Brownlee's claims for gender and race discrimination and

retaliation under Title VII are therefore not subject to the same jurisdictional bar as

her other claims. (ECF No. 7, PageID. 86–88, 91–92, 101–02).  41B thus moved to

dismiss them under Rule 12(c), for failure to state a claim under Rule 12(b)(6). (ECF

No. 13, PageID.162–63, 168–69).  Because the Court agrees that Brownlee did not

allege plausibly her claims under Title VII, the Court will dismiss Counts I, IV, and

VIII.

The Court will begin with Brownlee's race and gender discrimination claims

before moving on to the retaliation claim.  The Supreme Court instructs that a

plaintiff bringing an employment discrimination claim "need not plead a prima facie

case of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

Rather, as courts in this district have recognized, a plaintiff need only meet the

typical Rule 12(b)(6) standard, such that a reasonable court could draw an inference

of discrimination from the defendant's alleged conduct. *Carter v. Shearer*, 596 F.

Supp. 3d 934, 955–56 (E.D. Mich. 2022); *Van Poperin v. Hewlett-Packard Co.*, No.

10-11110, 2010 WL 2805294, at *2 (E.D. Mich. July 15, 2010).  This standard still

requires, however, that the complaint include sufficient facts "to state claims of race

and gender discrimination that are plausible on its face." *Han v. Univ. of Dayton*, 541 Fed. App'x 622, 626 (6th Cir. 2013); *Blick v. Ann Arbor Pub. Sch. Dist.*, 516 F. Supp. 3d 711, 722 (E.D. Mich. 2021).  And "[a] complaint that allows the court to infer only a 'mere possibility of misconduct' is insufficient to 'show' that the complainant is entitled to relief and fails to meet the pleading requirements of Rule 8." *Han*, 541 Fed. App'x at 626 (quoting *Iqbal*, 556 U.S. at 679).

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1).  To state an employment discrimination claim under Title VII, the plaintiff must show that an adverse employment action occurred. *Blick*, 516 F. Supp. 3d at 723.  Otherwise, the court may dismiss the claim. *Id.*  An adverse employment action consists of "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 798 (6th Cir. 2004) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010).

The thrust of Brownlee's race and gender discrimination claims are as follows. Brownlee alleged that her co-worker made negative statements about her, such as

referring to Brownlee as "the problem child," telling a group of thirty employees and judges that they should "light a match and blow up the probation department," and informing new employees that they should avoid working in probation. (ECF No. 7, PageID.81–82).  In addition, white men in the probation department were allegedly held to different standards and treated more favorably than Brownlee. (*Id.* at PageID.79).  For example, these individuals falsified files, made mistakes, and lied about reasons for taking time off, seemingly without consequence. (*Id.* at PageID.78–79, 82–83).  When Brownlee reported her concerns, her superiors disregarded them. (*Id.* at PageID.78–84).  And Brownlee experienced an adverse employment action given that 41B removed her from her position. (*Id.* at PageID.86).  Brownlee therefore asked the Court to hold 41B liable for its employees' Title VII violations.

But the Court cannot discern any connection between Brownlee's termination and her race or gender sufficient to state a Title VII claim.  Although the complaint "need not present 'detailed factual allegations,' it must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could draw the reasonable inference" that 41B, through its employees, discriminated against Brownlee. *Han*, 541 Fed. App'x at 626 (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)).  Here, Brownlee failed to allege facts beyond "bare and conclusory assertions" that her race and gender resulted in

17

her termination, such that the court cannot infer a discriminatory basis. *Han*, 541 Fed. App'x at 627.  Other than alleging that she is African American and a woman, Brownlee offered no evidence of race- or gender-based animus toward her.

Instead, Brownlee pointed largely to "trivial workplace dissatisfactions" as the grounds for her Title VII claims. *White*, 364 F.3d at 795.  That is, Brownlee alleged that she had no say in how to operate the probation department or who to staff to assist her following a series of department layoffs. (ECF No. 7, PageID. 78–79).  Likewise, her superiors ignored Brownlee's input on staffing and instead added employees to probation that were ill-equipped for the role. (*Id.* at PageID.81).  But it is unclear how Brownlee's general frustrations with 41B's managerial structure relate to her race or gender.  And based on the pleadings, the Court is more likely to draw an inference that ignorance of criticism of certain employees stemmed from nepotism or favoritism, not bias toward Brownlee's protected classes. *See id.* at PageID.81 (stating certain employees "needed to be hired" because of personal connections with judges).

The Court finds Brownlee's allegations regarding negative statements made about her by co-workers similarly disconnected from race or gender discrimination. Although comments about blowing up the probation department and referring to Brownlee as a "problem child" are inappropriate, they are not actionable under Title VII. *See Trepka v. Bd. of Educ.*, 28 Fed. App'x 455, 462 (6th Cir. 2002) (holding

harassment motivated by personal dislike not actionable under discrimination laws). The Court understands how frustrating a workplace like 41B, as alleged in Brownlee's complaint, can be. But the Court also recognizes that poor management and unprofessional colleagues do not equate to discrimination without other proof of racial or gender-based animus. Plus, Brownlee presented no evidence that her removal was motivated by her race or gender.

The same reasoning applies to Brownlee's hostile work environment allegations under Title VII. Title VII "prohibits discrimination that is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Fuelling v. New Vision Med. Lab'ys, LLC*, 284 Fed. App'x 247, 258–59 (6th Cir. 2008) (citation omitted). A plaintiff may establish a violation of Title VII by proving that race or gender discrimination created a hostile or abusive work environment without having to prove an adverse employment action. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000). "A hostile work environment occurs '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* at 463 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In assessing a hostile work environment claim, the court considers the work environment "as a whole . . . rather than a focus on individual acts of alleged

hostility." *Bowman*, 220 F.3d at 463.  "Conduct that is 'merely offensive' will not support a hostile work environment action." *Trepka*, 28 Fed. App'x at 461 (quoting *Harris*, 510 U.S. at 21).  And the employee must "demonstrate that the allegedly harassing conduct was motivated by a bias toward the employee's protected class." *Trepka*, 28 Fed. App'x at 461.

Again, Brownlee failed to demonstrate that the harassing conduct had anything to do with her race or gender.  Her colleague's comments fall into the category of "merely offensive," and lack undertones of race or gender discrimination.  The complaint also is devoid of allegations that discriminatory conduct was so severe and pervasive that it interfered with Brownlee's work conditions.  Brownlee clearly disliked how management handled the probation department.  And management may have disregarded Brownlee's concerns. But the friction between Brownlee and management does not suffice to state a hostile work environment claim.

Finally, Brownlee did not state a valid retaliation claim, at least not one based on her race or gender.  "Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII." *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014); § 2000e-3(a).  That is, Title VII protects "not only the filing of formal discrimination charges with the EEOC, but also complaints to management and less formal protests of discriminatory

employment practices." *Laster*, 746 F.3d at 730.  Accordingly, Title VII protects Brownlee's complaints to management at 41B.

But to establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate that she engaged in an activity protected by Title VII, her employer knew of and took materially adverse action against her based on the exercise of the protected activity, and that a "causal connection existed between the protected activity and the materially adverse action." *Id.* (citation omitted).  Here, Brownlee failed to allege a connection between her complaints to management and her dismissal. From what the Court may infer from her complaint, her removal apparently resulted from her attempt to take medical leave under the FMLA. (ECF No. 7, PageID.85–86).  In fact, Brownlee specified in her complaint that the protected activity she engaged in was when she "spoke with her supervisors about medical leave." (*Id.* at PageID.92).  Considering that Title VII "does not cover age or disability claims" *Clark v. Dublin*, 178 Fed. App'x 522, 524 (6th Cir. 2006), Brownlee's retaliation claim is not an appropriate avenue to seek relief for her injury-related allegations.

Therefore, for all of the reasons stated above, Counts I, IV, and VIII are dismissed.

**C.    The Court Will Deny Brownlee's Request to Amend Her Complaint.**

Brownlee requested leave to amend her complaint in her response to 41B's motion to dismiss. (ECF No. 15, PageID.228).  When a plaintiff requests leave to amend its complaint in its opposition to a motion to dismiss, rather than in a separate motion, the Court may exercise its discretion to either grant or deny the request. *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 304–05 (6th Cir. 2011).  In *Pulte*, the district court did not abuse its discretion in denying leave to amend given that the plaintiff "already amended its complaint once" and "failed to file a proper motion justifying another amendment." *Id.* at 305.  The Sixth Circuit has also upheld denials of leave to amend made in opposition briefs for not following "the proper procedure for seeking leave to amend" and failing to "provide details concerning the proposed amendments." *Alexander v. Eagle Mfg. Co., LLC*, 714 Fed. App'x 504, 510–11 (6th Cir. 2017); *see also Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (taking issue with plaintiff's use of an opposition brief to request amendment).

Here, Brownlee intends to amend her complaint to bring her claims against individuals at 41B in their personal capacity. (ECF No. 15, PageID.228).  Although Brownlee explained her proposed amendments, *contra Alexander*, 714 Fed. App'x at 511, she did not follow the proper procedure for moving to amend, which includes

her failure to attach a proposed amended complaint to her response, *id.* at 510. Brownlee also already amended her complaint once, though she did so as a matter of course. *See* ECF No. 1 (original complaint); ECF No. 7 (amended complaint).

The Court will ultimately deny Bronwlee's request for leave to amend based on Brownlee's failure to file any motion seeking leave to amend. Critically, by not filing a motion (and thereby not attaching a proposed amended complaint), the Court has no way of knowing whether Brownlee intends to limit her changes to adding new defendants. Without such knowledge, the Court cannot make an informed decision about whether allowing an amendment almost a year after Brownlee filed her first amended complaint would unduly prejudice 41B. And Brownlee is free to bring any viable claims against the individual defendants in a separate complaint given that the Court will dismiss her claims without prejudice.

\* \* \*

For the reasons given, the Court **ORDERS** that the motion to dismiss (ECF No. 13) is **GRANTED**.

Dated: September 23, 2025                    s/Robert J. White_____
                                            Robert J. White
                                            United States District Judge